UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BILLIE ARENA,                          )
                                       )
                Plaintiff,             )
                                       )
        v.                             )        No.  4:11CV763 TIA
                                       )
MICHAEL ASTRUE, Commissioner           )
of Social Security,                    )
                                       )
                Defendant.             )

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

        This cause is on appeal from an adverse ruling of the Social Security Administration.

The suit involves applications for Supplemental Security Income under Title XVI and Disability

Insurance Benefits under Title II of the Act.  Claimant has filed a Brief in Support of his

Complaint; the Commissioner has filed a Brief in Support of his Answer. The parties consented to

the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

        Claimant filed Applications for Supplemental Security Income payments pursuant to Title

XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq,(Tr. 135-38)[1] and Disability Insurance

Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 139-41) alleging disability since

September 2, 2004 due to depression, palpitations, rapid weight loss, respiratory problems,

thyroid problems, anxiety, and high blood pressure.  (Tr. 80).  The applications were denied (Tr.

90-94), and Claimant subsequently requested a hearing before an Administrative Law Judge

---

[1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer.
(Docket No. 12/filed July 8, 2011).

("ALJ"). (Tr. 96-100). On September 11, 2009, a hearing was held before an ALJ. (Tr. 32-72).

Claimant testified and was represented by counsel. (Id. at 32-66). Vocational Expert Brenda

Young also testified at the hearing. (Tr. 66-72, 133-34). In a decision dated December 17, 2009,

the ALJ found that Claimant had not been under a disability as defined by the Social Security Act.

(Tr. 76-86). The Appeals Council denied Claimant's Request for Review on March 28, 2011.

(Tr. 1-5). Thus, the ALJ's decision is the final decision of the Commissioner.

## II.  Evidence Before the ALJ

### A.  Hearing on September 11, 2009

#### 1.  Claimant's Testimony

At the hearing on September 11, 2009, Claimant testified in response to questions posed

by the ALJ and counsel. (Tr. 32-72). Claimant's date of birth is August 30, 1970. (Tr. 40).

Claimant testified that she is married and has three children ages 16, 19, and 20. (Tr. 40).

Claimant lives in a mobile home she owns. (Tr. 41). Claimant stands at five feet two inches and

weighs approximately 104 pounds. Claimant testified that since her automobile accident, she has

lost weight due to nausea, and her normal weight is between 110 and 113 pounds. (Tr. 41).

Claimant is right handed. (Tr. 42). Claimant testified that she walks with a cane, and she started

using the cane after the automobile accident. (Tr. 42-43). Claimant completed high school and

has no vocational training. (Tr. 43). Claimant testified that she cannot concentrate long enough

to read a whole book. (Tr. 43).

Claimant last worked at Jack-in-the-Box in 2007 for a month, but left because she

experienced difficulty in the noisy environment. (Tr. 45-46). Claimant could not hear what

people were doing around her, because she is deaf in her right ear. (Tr. 46). In August 2002,

Claimant worked through Master Chem Industries for five weeks entering data. (Tr. 46). In that job, Claimant was seated four to six hours of the workday and the other two hours doing generic office duties such as filing or delivering things to other workers. (Tr. 47). In 1996, Claimant worked as an assistant manager in a liquor store running the register, ordering alcohol, stocking the store, unloading trucks, and lifting fifty pounds. (Tr. 47-48). Claimant left the job, because her husband enrolled in a Bachelor program in St. Louis. (Tr. 48). In 1995, Claimant worked in an office supply company as an office manager, and her job duties included ordering supplies, working on the computer, and talking to customers. (Tr. 48-49). Claimant had to lift cases of paper. (Tr. 49). Claimant left the position for the better paying job at the liquor store. (Tr. 49). In 1994, Claimant worked as a property manager for a storage facility, and her job duties included running the property, renting storage units, and auctioning units. (Tr. 49-50). Claimant lifted over fifty pounds when she did general maintenance work. (Tr. 50). Claimant also worked as a waitress and a pizza delivery person. (Tr. 51).

Claimant testified that the vertigo causes her to experience balance issues. (Tr. 52). Claimant experiences nausea off and on throughout the day. Turning her head too fast triggers the vertigo. (Tr. 52).

Claimant testified that her anxiety and panic attacks would preclude her from working at a job requiring her to sit most of the day and look at a television monitor. (Tr. 53). Claimant experiences panic attacks each day lasting up to fifteen minutes. (Tr. 54). During a panic attack, Claimant feels like she is having a heart attack and experiences chest pain and difficulty breathing. After a panic attack, Claimant sleeps for several hours. (Tr. 54). Claimant testified that she experiences vertigo each day. (Tr. 54).

Claimant testified that she lost consciousness after the automobile accident. (Tr. 55). Dr. Marty attributes Claimant's vertigo to the injury she sustained when she fractured her skull and severed the nerve to her brain. (Tr. 55). Claimant testified that she experiences constant tinnitus preventing her from hearing sounds. (Tr. 56). Claimant experiences pain in her right shoulder 24/7 causing problems with her ability to grab, fold clothes, do dishes, and make the bed. (Tr. 56-57). Picking up a gallon of milk makes her shoulder feel like its coming out of the socket. (Tr. 57).

Claimant testified that a friend helps her do the grocery shopping, the dishes, and the laundry. (Tr. 57). Claimant cannot reach a plate in the cupboard. (Tr. 57). When Claimant tries to type, she experiences pain shooting into her shoulder. (Tr. 58). Claimant has problems gripping the steering wheel of a car. (Tr. 59).

Claimant testified that she uses a cane for balance due to vertigo. (Tr. 59). Claimant visits her parents and her brother who live in the same mobile park. (Tr. 59). Claimant joins her husband when he goes fishing. (Tr. 60). Claimant leaves the mobile park once a week to go grocery shopping. (Tr. 61). Claimant has a driver's license, and she renewed her license the year before. (Tr. 61).

Claimant testified that she has crying spells a couple times a week. (Tr. 60). Claimant has insomnia issues causing her not to sleep through the night. (Tr. 60).

Claimant sought treatment from Craig Ruble one time for her right shoulder problems. (Tr. 62-63). Claimant testified that she could not afford continuing the medical treatment due to lack of insurance. (Tr. 63). Claimant testified that she uses the cane on her right-hand side to help her balance. (Tr. 63-64). Claimant applied for Medicaid, but she was turned down. (Tr.

64). Claimant has insurance coverage for only birth control. (Tr. 65). Claimant can go to the Health Department in Hillsboro for female medical issues. (Tr. 65).

Claimant's counsel requested that the ALJ consider ordering a neuro psych evaluation to address her panic attacks and vertigo issue. (Tr. 65). The ALJ decided to keep the record open for thirty days to obtain additional medical records from Dr. Patel and to order a neuro psych examination. (Tr. 72).

### 2. Testimony of Vocational Expert

Vocational Expert Brenda Young, a vocational rehabilitation consultant, testified in response to the ALJ's questions. (Tr. 66-71). Ms. Young listened to the testimony during the hearing and reviewed the vocational evidence in the file. (Tr. 66). With respect to Claimant's past work, Ms. Young opined that her past work as a property manager was semiskilled and heavy job as performed by Claimant although such job is usually light to medium work demand. (Tr. 67). Claimant's job as the assistant manager of the liquor store was a semiskilled, heavy job. Ms. Young explained the office work, generally secretarial, was semiskilled and medium as performed by Claimant but such job would ordinarily be sedentary or light. The waitress job was unskilled and light. Claimant's pizza delivery job would be at the lower end of the semiskilled range because of the driving. (Tr. 67).

The ALJ asked Ms. Young to assume the following:

Assume, ..., a person of the Claimant's age, education, and work experience who is limited to work within the light exertional category; who is able to use her upper extremities to push or pull on a frequent basis, as defined in the Dictionary of Occupational Titles; however, is limited to only occasional overhead reaching with her dominant hand; and must avoid concentrated exposure to excessive noise and hazardous machinery; with jobs that do not require bilateral hearing capability; and that are limited to one or two-step tasks. Could such an individual perform any of

- 5 -

the Claimant's past relevant work, ma'am?

(Tr. 67). Ms. Young responded no. (Tr. 67). When asked if such individual could perform any other jobs that are with the national and local economy give those restrictions, Ms. Young responded yes in the light work category including a dining room or cafeteria helper job, with 4,500 jobs available in the St. Louis metro area. (Tr. 67-68). Ms. Young further opined that such individual could perform some small product assembly job, the DOT code 739.687-030, with approximately 15,000 jobs available in the metro area. (Tr. 68). Ms. Young noted that the individual would be able to perform light janitorial jobs, the DOT code 381.687-014 with approximately 10,000 jobs available in the metro area. (Tr. 68).

The ALJ asked Ms. Young whether an individual who requires a break every hour for ten minutes would be precluded from performing all jobs in the economy. (Tr. 69). Ms. Young responded yes. (Tr. 69).

Next, the ALJ asked Ms. Young to "[f]urther assume the individual that I gave in hypothetical number one, in addition to those, the limitations that I listed, also is limited to only occasional interaction with the public and occasional interaction with coworkers. Would that effect the, the number of jobs for the jobs that you cited at all , Ms. Young?" (Tr. 69). Ms. Young responded no. Ms. Young opined that for entry-level jobs, the individual would have to be available to work except for taking regularly scheduled breaks and could not take additional breaks for nausea or vertigo and still maintain employment. (Tr. 69).

In response to Claimant's counsel asking her whether the DOT gave each of the jobs she discussed a reasoning level, Ms. Young responded yes. (Tr. 70). Ms. Young opined that for the dining room or cafeteria helper and the small product assembler, there would be two for

reasoning, and for the janitorial position, there would be a one for reasoning.  (Tr. 70).

## III.  Medical and Other Records

On May 9, 2006, Dr. Ashutosh Patel treated Claimant for a bladder infection and medication refills.  (Tr. 275).  Claimant reported being under high stress at work and in family for the last three months.  Claimant denied weight loss and being depressed.  Dr. Patel diagnosed Claimant with anxiety disorder and urinary tract infection and prescribed Zoloft and Xanax as treatment.  Dr. Patel counseled Claimant to stop smoking, to diet, and to exercise.  (Tr. 275).

On July 3, 2006, Claimant was admitted to Citizens Memorial Hospital via the emergency room after being in a motor vehicle accident.  (Tr. 225-27).  Claimant reported being uncertain if she loss consciousness and having nausea and chest and upper back pain.  (Tr. 227).  Claimant noted that she feels like she has fluid in her ears.  (Tr. 227).  Respiratory and psychiatric problems are listed as her past medical history.  (Tr. 230).  Claimant reported being a smoker.  (Tr. 230).  In the visit notes, a nurse noted how Claimant denied loss of consciousness at the time of the accident.  (Tr. 232).  Clinical basilar skull fracture and hemotympanic are listed as her diagnosis, and the treating doctor noted that Claimant can move all extremities and complaining of dizziness.  (Tr. 234).  The computed tomography of Claimant's abdomen and pelvis showed a small amount of free fluid in the cul-de-sac, and no abnormal soft tissue masses observed in her pelvis.  (Tr. 249).  The diagnostic imaging of Claimant's cervical spine showed no fracture or dislocation, and no evidence of stenosis of the spinal canal or neural foramina in the cervical spine.  (Tr. 250).  The diagnostic imaging of her head showed no evidence of parenchymal lesions, and no evidence of intracranial hemorrhage or fractures.  (Tr. 251).  The diagnostic image of her right shoulder revealed right acromioclavicular joint separation.  (Tr. 254).  Claimant was transferred to St.

John's for treatment.  (Tr. 246).

On July 11, 2006, Claimant had an audiogram to measure hearing loss in her right ear. (Tr. 265).  Although Claimant had been transferred to Springfield for a possible skull fracture, no skull fracture was located.   The audiogram showed no effusion, hematoma, or perforation, resolving Battle's sign, and lac post auricular.  The audiogram indicated a hearing loss.   The doctor directed Claimant not to blow her nose or swim and prescribed Keflex.  (Tr. 265).

The audiogram completed on August 17, 2006 following hearing loss from the accident showed Claimant to have tinnitus.  (Tr. 263).  Claimant reported having dizziness and nausea, but the nausea comes and goes and is not daily.  (Tr. 263).

In a follow-up visit on October 10, 2006, Claimant reported feeling overwhelmed most of the time and high stress in family and at work.  (Tr. 277).  Claimant denied having sleep disturbances and weight loss.  Dr. Patel diagnosed Claimant with panic disorder and depressive disorder.  Dr. Patel counseled Claimant to stop smoking, to diet, and to exercise.  (Tr. 277).

On December 6, 2006, Dr. Craig Ruble treated Claimant for her right shoulder pain.  (Tr. 267).  Claimant reported having significant decreased range of motion and strength.  Claimant reported treatment consisting of using a sling, and reported no other complaint.  Examination showed Claimant to be alert and oriented times three and to have a normal mood and affect.  Dr. Ruble observed Claimant to have a normal gait and good coordination.  Examination showed no obvious asymmetry present and some decreased active range of motion and strength in her right shoulder and a positive impingement test.  Dr. Ruble noted some tenderness in her right shoulder. (Tr. 267).  Dr. Ruble listed right shoulder pain secondary to impingement syndrome and right AC joint sprain and a right trapezius strain as his assessment.  (Tr. 268).  As treatment, Dr. Ruble

recommended icing and elevating frequently and physical therapy and gave her a prescription for an anti-inflammatory. (Tr. 268). The x-ray showed no significant degenerative change in either joint, and the outlet view revealed a fairly significant curvature of the acromion anteriorly. (Tr. 269).

On September 18, 2007, Claimant reported having a cough for two to three days, nasal congestion, and chest congestion. (Tr. 279). Respiratory examination showed no shortness of breath. Claimant reported not taking any medications and denied having any dizziness or chest pain. (Tr. 279). Dr. Patel diagnosed Claimant with acute bronchitis, cough, and insomnia and prescribed Xanax and Zithromax as treatment. (Tr. 280). Dr. Patel counseled Claimant to stop smoking and to exercise. (Tr. 280).

On March 17, 2008, Claimant returned for a follow-up visit for her anxiety. (Tr. 281). Claimant reported high stress in her family and at work and feeling overwhelmed intermittently. Dr. Patel prescribed Xanax and Prozac. (Tr. 281).

In a follow-up visit on June 3, 2008, Claimant reported no weight gain or loss and having sleep disturbances or experiencing shortness of breath. (Tr. 282, 286). Dr. Patel continued Claimant's Xanax and Prozac prescriptions. (Tr. 282, 286). Dr. Patel counseled Claimant to stop smoking and to exercise. (Tr. 283, 287).

On July 15, 2008, Claimant returned for treatment of her vertigo. (Tr. 288). Claimant denied having sleep disturbances and weight gain or weight loss. Claimant reported experiencing mild to moderate dizziness for the last two weeks with no improvement. Dr. Patel listed vertigo NOS, pleurisy NOS, insomnia, and adjustment disorder with anxiety in the assessment. (Tr. 288). Dr. Patel continued Claimant's medications and ordered diagnostic imaging for her vertigo. (Tr.

290).

The July 17, 2008 the MRI of Claimant's brain showed normal results. (Tr. 284-85).

In the Physical Residual Functional Capacity Assessment completed on August 27, 2008, the medical consultant listed Claimant's primary diagnosis to be right shoulder strain, her secondary diagnosis to be pleurisy, and his other alleged impairments to be hearing loss. (Tr. 291). The consultant noted that Claimant can occasionally lift twenty pounds, frequently lift ten pounds, and stand and walk about six hours in an eight-hour workday. (Tr. 292). The consultant noted that Claimant can sit about six hours in an eight-hour workday and has unlimited capacity to push and/or pull other than shown. As evidence in support, the consultant noted that Claimant had been recently diagnosed with pleurisy but the problem had resolved itself. (Tr. 292). The consultant noted Claimant has been diagnosed with hearing loss in her right ear, and although she reports balance problems, she made no complaints to her treating doctor regarding this symptom. (Tr. 292-93). Although Claimant reports continued pain and weakness in her right shoulder, Claimant did not report such problems to her doctor. (Tr. 293). Claimant takes over-the-counter medications for her pain. Claimant reported problems using her right arm and lifting. Claimant is able to prepare simple meals, do laundry and dishes, and grocery shopping twice a month. The consultant opined that Claimant's statements to be considered partially credible. Based on the medical evidence on the record, the consultant opined that Claimant can perform light tasks on a sustained basis. (Tr. 293). With respect to postural limitations, the consultant found Claimant can occasionally stoop and balance, and she should limit climbing ladders and balancing due to shoulder pain and hearing problems. (Tr. 294). The consultant indicated that Claimant has no established manipulative, visual, or communicative limitations. (Tr. 293-94). The consultant

opined that Claimant should avoid concentrated exposure to vibration and hazards such as machinery and heights. (Tr. 295). Claimant should also limit her exposure to noise due to hearing and balance problems. (Tr. 295).

In the September 2, 2008 Mental Residual Functional Capacity Assessment, Dr. Spence found Claimant to be moderately limited in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, and her ability to maintain attention and concentration, (Tr. 297). With respect to social interaction, Dr. Spence found Claimant to be moderately limited in her ability to interact with the general public, to accept instructions, and to respond appropriately to changes in the work setting. (Tr. 298). Dr. Spence noted that Claimant has been diagnosed with anxiety, depression, panic disorder, and adjustment disorder and being treated with Prozac and Xanax. (Tr. 299). At her last examination, Claimant reported some stress with her family and work and no limitations noted. Dr. Spence opined that Claimant has the ability to complete simple, repetitive tasks on a sustained basis away from the public. (Tr. 299).

In the Psychiatric Review Technique dated September 2, 2008, Dr. Spence found Claimant to have affective disorders and anxiety-related disorders. (Tr. 300). Dr. Spence opined that Claimant has a medically determinable depressive disorder and panic disorder. (Tr. 303-04). With respect to functional limitations, Dr. Spence found Claimant to be mildly restricted in activities of daily living and moderately limited in maintaining social functioning and maintaining concentration, persistence, and pace. (Tr. 308).

On referral by Disability Determinations, Dr. Thomas Spencer completed a psychological evaluation on October 19, 2009. (Tr. 319-22). Dr. Spencer noted that Claimant alleges to be

disabled due to deafness, anxiety, depression, bursitis on her right side, and COPD. (Tr. 319). Dr. Spencer noted that Claimant complained of ongoing impairment in her balance and chronic tinnitus. (Tr. 319). Claimant reported experiencing insomnia and her appetite varying. (Tr. 320). Claimant reported her attention and concentration being impaired much of the time. (Tr. 320). Claimant reported getting along in the workplace. (Tr. 321). Dr. Spencer observed Claimant to ambulate without assistance, and her insight and judgment appeared relatively intact. Claimant completed serial 3s making no errors. (Tr. 321). In the diagnostic formulation, Dr. Spencer assessed her GAF to be 50 to 55. (Tr. 322). Dr. Spencer opined that in speaking with Claimant, she endorsed symptoms consistent with posttraumatic stress disorder and a presence of depression. Dr. Spencer opined that Claimant retained the ability to manage her benefits without assistance. (Tr. 322).

In the Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Spencer found Claimant's impairment would affect her ability to understand, remember, and carry out instructions. (Tr. 316). Dr. Spencer opined that Claimant had marked limitations in her ability to understand and remember complex instructions, to carry out complex instructions, and to make judgment on complex work-related decisions. (Tr. 316). Dr. Spencer opined that her impairment would affect her ability to interact appropriately with coworkers and the public. (Tr. 317). Dr. Spencer noted Claimant would be moderately limited in interacting appropriately. (Tr. 317).

## IV.    The ALJ's Decision

The ALJ found that Claimant has not engaged in substantial gainful activity since December 9, 2006, and she has met the insured status requirements through December 31, 2006.

(Tr. 21).  The ALJ found that Claimant has the severe impairments of right shoulder impingement, vertigo, and right ear hearing loss.  (Tr. 22).  The ALJ opined that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  After careful consideration of the entire record, the ALJ determined that Claimant has the residual functional capacity to perform light work except she is limited to jobs that do not require frequent pushing or pulling with the upper extremities, no overhead reaching, no concentrated exposure to noise or use of hazardous machinery, and do not require bilateral hearing capabilities.  (Tr. 22).  The ALJ further opined the such jobs must be limited to only one or two-step tasks with only occasional interaction with public or coworkers, and must allow a ten minute break every two hours.  (Tr. 22-23).  The ALJ found Claimant is unable to perform any of her past relevant work.  (Tr. 26).

The ALJ noted that Claimant is thirty-six years old and thus a younger individual, and she completed a year of college and is able to communicate in English.

Considering Claimant's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs existing in significant numbers in the national economy that Claimant can perform.  (Tr. 26).  The ALJ concluded that Claimant has not been under a disability from December 9, 2006, through the date of the decision.  (Tr. 27).

## V.    Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing

other work in the national economy.  In step five, the ALJ must consider the claimant's "age, education, and past work experience."  Only if a claimant is found incapable of performing other work in the national economy will she be found disabled.  20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole."  Pearsall, 274 F.3d at 1217.  Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  Id.  The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The claimant's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the claimant's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred in formulating his residual functional capacity. Next,

Claimant contends that the vocational expert's testimony is inconsistent with the DOT.

A.    Residual Functional Capacity

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred in formulating his residual functional capacity.  In particular, Claimant argues that the ALJ failed to properly consider the effects of her medically determinable impairments, her right shoulder impingement and vertigo.

A claimant's RFC is what he can do despite his limitations.  Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).  The claimant has the burden to establish his RFC.  Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  The ALJ determines a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations.  Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Eichelberger, 390 F.3d at 591; 20 C.F.R. § 404.1545(a).  The ALJ is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace.  Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted).  An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand.  Id.

In his decision the ALJ thoroughly discussed the medical evidence of record, her lack of functional restrictions by any physicians, and Claimant's daily activities.  See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities).  The ALJ then addressed several

inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.

Specifically, the ALJ noted that no treating physician in any treatment notes stated that Claimant was disabled or unable to work or imposed significant long-term physical and/or mental limitations on Claimant's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). Further, the ALJ noted that Claimant's subjective complaints were not supported or consistent with the relatively minor clinical signs, symptoms, and findings of the objective medical evidence of record. Indeed, on referral by Dr. Patel, Dr. Ruble diagnosed Claimant with right shoulder pain, secondary to impingement syndrome and prescribed an anti-inflammatory medication and recommended physical therapy. After examination on December 3, 2006, Dr. Ruble found some decreased active range of motion and strength in the right shoulder, but neurovasculary intact. Further, on September 18, 2007, during a follow-up visit with Dr. Patel, Claimant denied chest

pain and dizziness and reported not taking any prescription medications and continued smoking.

In addition, the ALJ noted that no physician had ever made any medically necessary restrictions, restrictions on her daily activities, or functional limitations. Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir. 1996) (lack of significant medical restrictions imposed by treating physicians supported the ALJ's decision of no disability). Likewise, the ALJ noted how the medical record is devoid of any evidence showing that Claimant's condition has deteriorated or required aggressive medical treatment. Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993)( lack of ongoing treatment is inconsistent with complaints of disabling condition).

The ALJ also properly considered the inconsistencies between Claimant's allegations and her activities. The ALJ noted that Claimant is able to live and function independently, perform light household chores, go grocery shopping, and walk about one-half mile during a typical day. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001) ("[i]nconsistencies between subjective complaints of pain and daily living patterns diminish credibility"); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (affirming ALJ's discount of claimant's subjective complaints of pain where claimant was able to care for one of his children on daily basis, drive car infrequently, and go grocery shopping occasionally). Further, the ALJ noted how, by her own admission, Claimant is able to engage in a fair range of household chores and activities. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("The ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence."); See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding that activities such

as driving, shopping, watching television, and playing cards were inconsistent with the claimant's complaints of disabling pain).

Further, the undersigned notes that Claimant continued to smoke cigarettes despite alleging being disabled due to palpitations, rapid weight loss, respiratory problems, thyroid problems, anxiety, and high blood pressure and the fact that she was repeatedly advised to stop. During office visits to Dr. Patel, Claimant reported continued smoking even though Dr. Patel discussed cessation of smoking with Claimant. The ALJ considered that Claimant was a longtime smoker; that Claimant continued to smoke a pack of cigarettes a day; that Claimant did not want to quit smoking even when offered assistance; and that her smoking is inconsistent with her allegations of disability. A lack of desire to improve one's ailments by failing to follow suggested medical advice detracts from a claimant's credibility. See Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001) (claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain);Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) (holding that an ALJ can discredit subjective complaints of pain based on claimant's failure to follow a prescribed course of treatment). Additionally, subjective complaints of pain may be discredited where a claimant ceases to stop smoking upon a doctor's advice. See Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006) ("[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failing to take prescription medications, seek treatment, and quit smoking."); Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 1996) (citing Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding impairments which are controllable or amenable to treatment do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including cessation of

smoking, without good reason is grounds for denying an application of benefits). Therefore, Claimant's failure to cease smoking detracts from her claim that she is unable to engage in substantial gainful employment.

Claimant also testified at the hearing that she has to use a cane for balance and ambulation, but there is no objective medical evidence substantiating Claimant's need to use a cane. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) (whether there is a need to lie down is a medical question requiring medical evidence; record did not contain any evidence that medical condition required claimant to lie down for hours each day). Indeed, the record shows that there is no objective medical evidence substantiating Claimant's need to use a cane. Further, the record shows Claimant never reported to any doctors her need to use a cane. Likewise, no doctor determined Claimant needed to use a cane for ambulation as a medical necessity. Thus, if Claimant was not using a cane for ambulation out of medical necessity, she must be doing so out of choice. See Craig v. Chater, 943 F. Supp. 1184, 1188 (W.D. Mo. 1996); Cf. Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) (whether there is a need to lie down is a medical question requiring medical evidence; record did not contain any evidence that medical condition required claimant to lie down for hours each day). Indeed, during the examination on December 3, 2006, Dr. Ruble observed Claimant to have a normal gait. Likewise, on October 19, 2009, Dr. Spencer observed Claimant to ambulate without assistance. These observations are supported by substantial evidence on the record as a whole.

In support of his credibility findings, the ALJ noted that Claimant's impairments were controlled with treatment, see Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of

disability."); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (noting that if impairment can be controlled by treatment, it cannot be considered disabling); see also Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."), and that no physician who examined Claimant found her to have limitations consistent with disability. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined [claimant] submitted a medical conclusion that she is disabled and unable to perform any type of work."). The lack of medical evidence supporting Claimant's complaints was a proper consideration when evaluating her credibility, see Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006), as was her failure to pursue more aggressive treatment. See Tate v. Apfel, 167 F.3d 1191, 1197 (8th Cir. 1999). Dr. Ruble diagnosed Claimant with right shoulder pain, secondary to impingement syndrome and prescribed an anti-inflammatory medication and recommended physical therapy.

Further, the undersigned notes that Claimant has worked despite her alleged disability. See Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (low earnings and significant breaks in employment cast doubt on complaints of disabling symptoms). At the hearing, Claimant testified that she last worked at Jack-in-the-Box for a month, but left because she experienced difficulty in the noisy environment. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability).

Likewise, the ALJ cited Claimant's poor earnings record as another factor detracting from her credibility. See Fredrickson v. Barnhart, 359 F.3d 972, 976-77 (8th Cir. 2004)(holding that claimant was properly discredited due, in part, to her sporadic work record reflecting low earnings and multiple years with no reported earnings, pointing to potential lack of motivation to work). This is a proper consideration. See Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011); accord Wildman v. Astrue, 596 F.3d 959, 968-69 (8th Cir. 2010). The record reflects Claimant's highest earnings since the year 2000 were $3,806 in 2002.

After engaging in a proper credibility analysis, the ALJ incorporated into Claimant's RFC those impairments and restrictions found to be credible. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) (the ALJ "properly limited his RFC determination to only the impairments and limitations he found credible based on his evaluation of the entire record."). In relevant part, the ALJ opined as follows: "Due to her medical condition, she is further limited to jobs that do not require frequent pushing or pulling with upper extremities, no overhead reaching, no concentrated exposure to noise or use of hazardous machinery, in jobs not requiring bilateral hearing capabilities. Additionally, she is limited to only one or two-step tasks with only occasional interaction with the public or coworkers and requires a ten minute break every two hours." (Tr. 25). Such limitations showed the ALJ accounted for her right shoulder impairment and vertigo to the degree substantiated by the medical evidence in his RFC determination.

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's

allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court. Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings. See Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence). Those included Claimant's conservative medical treatment, his lack of functional restrictions by any physicians, his daily activities, and poor earnings record. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints of pain.

- 24 -

See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

B.        Vocational Expert Testimony

Claimant contends that the testimony of the vocational expert did not constitute substantial evidence upon which a determination could be made that Claimant was not disabled arguing the vocational expert's testimony is inconsistent with the DOT.

The ALJ may seek the opinion of a vocational expert regarding jobs the claimant can perform. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). The vocational expert will be asked to respond to a hypothetical question, posed by the ALJ, which includes all of the impairments of the claimant. The question must "precisely set out the claimant's particular physical and mental impairments." Leoux v. Schweiker, 732 F.2d 1385, 1388 (8th Cir. 1984). The ALJ's hypothetical question posed to a vocational expert need not include alleged impairments which the ALJ has rejected as untrue. Young v. Apfel, 221 F.3d 1065, 1069 (8th

Cir. 2000); Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997).

The Dictionary of Occupational Titles, published by the Department of Labor, provides standardized occupational information to support job placement activities in the national economy. Montgomery v. Chater, 69 F.3d 273, 274 (8th Cir. 1995). The DOT describes the demands of a job as it is usually performed in the national economy. See Kirby v. Sullivan, 923 F.2d 1323, 1327 (8th Cir. 1991). "DOT definitions are general job descriptions offering approximate maximum requirements for each position rather than their range." Jones v. Astrue, 619 F.3d 963, 978 (8th Cir. 2010). If the Commissioner determines a claimant does not have the capacity to perform past jobs, he may rely on a vocational expert's testimony to show that the claimant can perform other work with his or her existing symptoms. Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008). The ALJ shall pose hypothetical questions for the vocational expert describing Claimant's symptoms. Id. The questions do not have to include all of the claimant's alleged impairments, just "those impairments that the ALJ finds are substantially supported by the record as a whole." Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006).

The vocational expert, considering the physical and mental capacity of the claimant, must determine whether jobs exist in the national economy that someone with claimant's symptoms could perform. Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000). The vocational expert's determination should be consistent with the definitions provided in the DOT. Id. at 1070. However, if there are any discrepancies, the vocational expert may rebut the DOT classification with a reasonable explanation for that discrepancy. Id. That explanation should show that particular jobs, whether classified "as light or sedentary, may be ones that a claimant can perform." Id.

Claimant contends that inasmuch as she is limited to simple one-two step work, she cannot perform the jobs of small products assembler or dining room attendant because these jobs have a reasoning level of 2 as defined in the DOT. This Court has rejected this argument finding that there was no express conflict between the DOT description of a job requiring level two reasoning and a vocational expert's testimony that an individual who was limited to one or two-step tasks could perform such jobs. Blocker v. Astrue, 2010 WL 5572743 at *15-16 (E.D. Mo. 2010). The Honorable Judge Mummert opined as follows:

> [t]he ALJ limited the jobs to ones requiring only one to two step instructions. The VE's testimony that these four jobs could be performed by a person with such restrictions is not directly contradicted by the reasoning levels of the DOT. "Because the [VE] specifically limited his opinion to reflect [one to two step instructions only], his testimony was a perfectly acceptable basis for the [ALJ's] conclusions."

Id. at 16 (quoting Jones v. Astrue, 619 F.3d 963, 978 (8th Cir. 2010)). Accordingly, Claimant's claim that she cannot perform the jobs of small products assembler or dining room attendant because these jobs have a reasoning level of 2 as defined in the DOT should be denied. Therefore, substantial evidence supports the ALJ's determination that Claimant was not disabled. Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that  the final decision of the Commissioner denying social security benefits be **AFFIRMED**.  Judgment shall be entered accordingly.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  20th  day of August, 2012.